Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Robert Fernandes (SBN 331780)
robert.fernandes@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

*Attorneys for Plaintiff FOX FACTORY, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

FOX FACTORY, INC.,

Plaintiff,

v.

SRAM, LLC,

Defendant.

CASE NO. 2:22-cv-04805-DOC-JC

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

1. Plaintiff FOX Factory, Inc. ("FOX Factory" or "Plaintiff") files this Complaint for Patent Infringement against Defendant SRAM, LLC ("SRAM") and alleges as follows:

## NATURE OF ACTION

2. This Complaint seeks judgment that SRAM has infringed and continues to infringe FOX Factory's U.S. Patents Nos. 9,739,331 ("the '331 patent") and 8,550,223 ("the '223 patent"). The '331 patent is titled "Method and Apparatus for an Adjustable Damper." A true and accurate copy of the '331 patent is attached hereto as Exhibit A. The '223 patent is titled "Methods and Apparatus for Position Sensitive Suspension Dampening." A true and accurate copy of the '223 patent is attached hereto as Exhibit B.

## PARTIES

3. Plaintiff FOX Factory is a corporation organized and existing under the laws of California, and has its principle place of business at 915 Disc Drive, Scotts Valley, California 95066.

4. On information and belief, Defendant SRAM is a limited liability company organized and existing under the laws of Delaware and has its principal place of business at 1000 West Fulton, Chicago, Illinois 60607. On its website, SRAM refers to its offices in Chicago as its "global headquarters" (https://www.sram.com/en/company/about/locations).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a), and under the patent laws of the United States, 35 U.S.C. § 1, et seq.

6. This Court has personal jurisdiction over SRAM due at least to its regular and established place of business in the State of California and in this judicial district, and its sales of the following accused products in California and this judicial district (as set forth below): 1) RockShox Lyrik, Pike, and ZEB series of forks, with each

series including a base, Select, Select+, Ultimate, and Ultimate Flight Attendant model, and 2) RockShox Super Deluxe Coil series of rear shocks, which includes the Ultimate, Ultimate DH, Select, and Select+ models. Venue is proper over SRAM for the same reasons.

7. On information and belief, SRAM does business under the name RockShox®, a trademark registered to SRAM, and sells under that brand the accused RockShox Lyrik, Pike, and ZEB series of forks, and the RockShox Super Deluxe Coil series of rear shocks.

8. On information and belief, SRAM employees ("SRAMmies") engage in product development, testing, and marketing in SRAM's regular and established place of business at 4720 Allene Way, San Luis Obispo, California 93401, in this District. SRAM's "Locations" webpage describes SRAM's facility and activities in San Luis Obispo as follows: "SAN LUIS OBISPO, CA Chainrings, bottom brackets, cranks, and front derailleurs are all developed, prototyped, and lab tested in our SLO facility. These products are then field tested on the area's world-class roads and trails. This facility also hosts marketing, advanced development, and HR team members to round out this tightly-knit group of SRAMmies." *See* https://www.sram.com/en/company/about/locations.

9. On information and belief, directly and/or indirectly through customers, dealers, intermediaries, and agents, SRAM offers for sale, sells, and distributes the Accused Forks and Accused Shocks (as detailed in ¶¶ 17 and 22 below) in California and in this judicial district.

10. On information and belief, SRAM has also authorized approximately fifty dealers of SRAM products in and near San Luis Obispo, California, as stated on is website. *See* https://www.sram.com/en/dealer-locator. Via its website, SRAM encourages visitors to "Find a Dealer" to purchase SRAM products (including the Accused SRAM Forks and Shocks), and for service of said products in California and in this judicial district. *See* https://www.sram.com/en/service ("We encourage you to

visit your local bike shop - especially an authorized SRAM dealer - for expert advice, installation and service for SRAM products.”).

11. On information and belief, one or more SRAM subsidiaries or affiliates manufactures the Accused Forks and Accused Shocks and sells them to customers, including original equipment manufacturers (OEMs) and agents of OEMs, knowing and intending that the customers will sell some of the accused products to customers in the United States, California, and this judicial district. On information and belief, one or more of said SRAM subsidiaries has also shipped the Accused Forks and Accused Shocks to customers in the United States.

## FACTUAL BACKGROUND

12. For over thirty years, FOX Factory has been an industry leader in the design and development of high-performance shock absorbers and racing suspension products for mountain bikes, motorcycles, ATVs, UTVs, and off-road cars, trucks, and SUVs. FOX has earned a worldwide reputation for, among other things, high performance bicycle suspension forks and rear shocks.

### A. The ’331 Patent

13. FOX Factory’s ’331 patent issued on August 22, 2017. FOX Factory is the owner by assignment of all right, title, and interest in and to the ’331 patent and has the full and exclusive right to bring suit and enforce the ’331 patent and to collect damages for infringement.

14. Changes in elevation or temperature can increase air pressure in the lower fork leg of a telescoping suspension fork, which can increase axial friction and degrade performance. The ’331 patent discloses and claims, among other features of the claimed invention, an air bleed assembly disposed on the lower fork tube. Some of the benefits of the claimed invention include the ability to equalize atmospheric pressure in said lower fork tube and thereby improve fork performance by, among other things, allowing better responsiveness through the full travel, which increases small bump sensitivity and responsiveness and improves the riding experience.

15. FOX Factory forks that include an air bleed assembly on the lower fork tube and practice the ’331 patented invention have enjoyed commercial success. They have also been praised by the industry, which has particularly praised bleeder valve on the lower fork tube. SRAM has also copied FOX’s patented invention in the Accused Forks.

16. On information and belief, SRAM has been selling bike forks having telescopically engaged upper and lower leg tubes for nearly two decades. Yet SRAM did not offer for sale any bike forks that include an air bleed assembly on a lower fork tube until after both FOX Factory’s commercial success with its forks that practice the ’331 patent and after the issuance of the ’331 patent.

17. SRAM’s RockShox Lyrik, Pike, and ZEB series of forks, with each series including base, Select, Select+, Ultimate, and Ultimate Flight Attendant models, and all other SRAM fork products having the same or reasonably similar air bleed assembly on the lower fork tube, are referred to as Accused Forks herein.

18. On information and belief, SRAM sells upgrade kits that customers can use to modify the base and Select models of the Lyrik, Pike, and ZEB forks. *See* https://www.sram.com/en/rockshox/models/fs-upk-prv-a1 (offering upgrade kits compatible with Lyrik, Pike and ZEB series of forks).

19. On information and belief, at least some employees at SRAM involved in the design, development, and sales of the Accused Forks were aware of FOX’s ’331 patent, and that the Accused Forks infringed the ’331 patent, during SRAM’s development of those products and before SRAM offered them for sale in the United States.

**B. The ’223 Patent**

20. FOX Factory’s ’223 patent issued on October 8, 2013. FOX Factory is the owner by assignment of all right, title, and interest in and to the ’223 patent and has the full and exclusive right to bring suit and enforce the ’223 patent and to collect damages for infringement.

21. Vehicle suspension systems commonly make use of a shock absorber with both a spring and a damping mechanism, such as a piston. The ’223 patent discloses and claims, among other features of the claimed invention, a user adjustable system for position sensitive damping which allows the user to adjust the fluid flow path between a bottom out cup and compression chamber of a damper.

22. SRAM’s Super Deluxe Coil series of rear shocks, which includes the Ultimate, Ultimate DH, Select, and Select+ models, and all other SRAM rear shock products having the same or reasonably similar adjustable hydraulic bottom out mechanism, are referred to as Accused Shocks herein.

## COUNT ONE

## INFRINGEMENT OF U.S. PATENT 9,739,331

23. FOX Factory realleges and incorporates by reference all of the preceding paragraphs as if fully set forth in this paragraph.

24. On information and belief, the Accused Forks include a lower fork and an air bleed assembly combination and comprise the claimed elements of at least claim 1 of the ’331 patent. On information and belief, SRAM’s RockShox Lyrik Ultimate fork is representative of the Select+, Ultimate, and Ultimate Flight Attendant models of the ZEB, Lyrik, and Pike series of Accused Forks as sold by SRAM. On information and belief, the Lyrik Ultimate fork is also representative of the base and Select models of the ZEB, Lyrik, and Pike series of Accused Forks as modified by end users using the upgrade kit sold by SRAM. Although the air bleed assembly of the base and Select models of the ZEB, Lyrik, and Pike forks (shown below) is not identical to the air bleed assembly of the Select+, Ultimate, and Ultimate Flight Attendant models, they are functionally the same with respect to claim 1 of the ’331 patent, such that the Lyrik Ultimate fork is also representative of all features of the unmodified base and Select models of the ZEB, Lyrik, and Pike forks for claim 1. As such, with regard to the features that infringe the ’331 patent described below, FOX’s

allegations and infringement mappings of the RockShox Lyrik Ultimate fork that follow are equally applicable to all Accused Forks.



**Optional Upgrade - Pressure Relief Valve (PRV) Installation - Select, Base**

Pressure Relief Valves (PRV) can be installed onto ZEB (A2), Lyrik (D1), and Pike (C1) Select and Base model forks as a lower leg upgrade at any time.









25. SRAM's RockShox Lyrik Ultimate fork includes a lower fork and an air bleed assembly combination, wherein a lower fork tube is configured to have a first end coupled to a vehicle wheel, as illustrated in the exemplary photo of SRAM's RockShox Lyrik Ultimate fork mounted on a bicycle and coupled to a vehicle wheel, and a second end configured to be telescopically engaged with a first end of an upper fork tube, as illustrated in the exemplary photo of the RockShox Lyrik Ultimate fork.



26. Said lower fork tube of SRAM's RockShox Lyrik Ultimate fork further includes a lower leg seal located at an outermost edge of said second end of said lower fork tube, said lower leg seal configured for sealing closing a gap disposed between said upper fork tube and said lower fork tube when said lower fork tube is telescopically engaged with said first end of said upper fork tube thereby preventing an oil bath lubrication occupying an area within said lower fork tube at a first end of said lower fork tube from leaking from said lower fork tube, as illustrated in the exemplary photo of the RockShox Lyrik Ultimate fork.



27. SRAM's RockShox Lyrik Ultimate includes an upper bushing attached to and positioned adjacent to said lower leg seal as illustrated in the exemplary photograph of SRAM's RockShox Lyrik Ultimate below.

Upper bushing (inside accused product)



28. SRAM's RockShox Lyrik Ultimate includes an air bleed assembly disposed on said lower leg fork tube, said air bleed assembly configured for equalizing ambient pressure within said lower fork tube, as illustrated in the above exemplary photograph of SRAM's RockShox Lyrik Ultimate.

29. Said air bleed assembly of SRAM's RockShox Lyrik Ultimate includes a fluid passage disposed between an interior of said lower fork tube and an exterior of said lower fork tube, as illustrated in the below exemplary photo of the Rock Shox Lyrik Ultimate fork.



30. SRAM's RockShox Lyrik Ultimate includes a manually operable valve having a first position substantially closing said fluid passage, as illustrated in the exemplary photo of the Rock Shox Lyrik Ultimate fork below.

31. Said manually operable valve in SRAM's RockShox Lyrik Ultimate has a second position allowing a fluid to flow between said interior and said exterior, as illustrated in the exemplary photo of the Rock Shox Lyrik Ultimate fork below.

32. Said manually operable valve in SRAM's RockShox Lyrik Ultimate is disposed between said lower leg seal and said first end of said lower fork, as illustrated in the exemplary photo of same below, and wherein said fluid passage and said manually operable valve are located at a distance from an oil bath lubrication within said lower fork, such that when said manually operable valve is in said second position, most, if not all of said oil bath lubrication remains within said lower fork and such that when trapped air pressure inside said lower fork, that is higher than a local ambient air pressure outside of said suspension fork, is relieved most, of said oil bath lubrication that is within said lower fork remains within said lower fork.





33. On information and belief, SRAM has directly infringed one or more claims of the '331 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing and/or distributing the Accused Forks in and into the United States.

34. On information and belief, SRAM has induced and continues to actively induce direct infringement of at least claim 1 of the ’331 patent through sale, offer for sale, and use of the Accused Forks by others (such as its distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). On information and belier, SRAM knew of the ’331 patent before offering the Accused Forks for sale, and SRAM has taken affirmative steps that have encouraged, aided and abetted (and continues to encourage, aid and abet) direct infringement by its distributors, retailers, resellers, customers, and end-users in the United States, and SRAM has known that its induced acts constitute infringement of the ’331 patent or has been willfully blind to the infringement. These acts include, but are not limited to, SRAM’s manufacture and supply of the Accused Forks (either directly or through direction of its wholly owned subsidiary(ies)), promotion on its website, providing user manuals/guides and instructions instructing its customers/end users how to use the Accused Forks, and on information and belief, its contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Forks in the United States.

35. Moreover, by making, selling or offering for sale the upgrade kits and the base and Select models of the Lyrik, Pike, and ZEB forks, SRAM has induced and continues to actively induce direct infringement of at least claim 1 of the ’331 patent under 35 U.S.C. § 271(b). More specifically, the end users of the base and Select models of the Lyrik, Pike, and ZEB series of forks directly infringe at least claim 1 of the ’331 patent when they use those forks in combination with the upgrade kits. SRAM has taken affirmative steps that have encouraged, aided and abetted (and continues to encourage, aid and abet) direct infringement by marketing, promoting, making, selling or offering for sale the upgrade kits and the base and Select models of the Lyrik, Pike, and ZEB series of forks, and also by providing instructions to end users to modify the base and Select models of the Lyrik, Pike, and ZEB forks with the upgrade kits.

36. On information and belief, SRAM has contributed to and continues to contribute to the direct infringement of at least claim 1 of the '331 patent by others (such as its distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(c). Upon information and belief, SRAM (either directly or through direction of its wholly owned subsidiary(ies)) supplies the Accused Forks or important (material) components of the Accused Forks to its distributors, retailers, resellers, customers, and end-users in the United States. Upon information and belief, SRAM knew or was willfully blind that its Accused Forks were both patented and infringing, that the Accused Forks are not a staple article or commodity of commerce, and that the Accused Forks do not have substantial non-infringing uses.

37.Moreover, by making, marketing, promoting, selling or offering for sale the upgrade kits, SRAM has contributed to and continues to contribute to direct infringement of at least claim 1 of the '331 patent under 35 U.S.C. § 271(c). More specifically, the end users of the base and Select models of the Lyrik, Pike, and ZEB series of forks directly infringe at least claim 1 of the '331 patent when they use those forks in combination with the upgrade kits. Furthermore, on information and belief, SRAM is aware that the upgrade kits are specially made or adapted for use in a manner that would infringe the '331 patent when used with the base and Select models of the Lyrik, Pike, and ZEB forks. Therefore, SRAM has contributed to and continues to contribute to the direct infringement of at least claim 1 of the '331 patent by others. Upon information and belief, SRAM knew or was willfully blind that the combination of the upgrade kits with the base and Select models of the Lyrik, Pike, and ZEB forks were both patented and infringing, that the upgrade kits are not staple articles or commodities of commerce, and that the upgrade kits do not have substantial non-infringing uses.

38. On information and belief, SRAM has infringed the '331 patent in an egregious and willful manner and with knowledge of the '331 patent, or was willfully blind to the risk of infringement.

39.SRAM's infringement of the '331 patent has caused and continues to cause damages and irreparable harm to FOX Factory.

40. FOX Factory began marking its products that are covered by the claimed inventions of the '331 patent at least as early as July 17, 2020. FOX Factory has satisfied the virtual patent marking and notice provisions of 35 U.S.C. § 287. *See https://www.ridefox.com/patents.php.*

**COUNT TWO**

**INFRINGEMENT OF U.S. PATENT 8,850,223**

41. FOX Factory realleges and incorporates by reference all of the preceding paragraphs as if fully set forth in this paragraph.

42. On information and belief, the Accused Shocks include a damper for a shock absorber comprising the claimed elements of at least claim 1 of the '223 patent. On information and belief, SRAM's Rockshox Super Deluxe Coil Ultimate is representative of the Accused Shocks that infringe the '223 patent with regard to the infringing features of these products, such that FOX's allegations and infringement mappings regarding the features of the Rockshox Super Deluxe Coil Ultimate are equally applicable to other Accused Shocks.



43. SRAM's Rockshox Super Deluxe Coil Ultimate includes a damper chamber for a shock absorber, the damper chamber divided by a piston and a shaft into a compression and rebound portions, as illustrated in the exemplary photo of the Super Deluxe Coil Ultimate.



44. SRAM's Rockshox Super Deluxe Coil Ultimate includes a bottom out cup formed at the end of the compression portion, as illustrated in the exemplary photo of the Super Deluxe Coil Ultimate.



45. SRAM's Rockshox Super Deluxe Coil Ultimate includes a fluid flow path formed in the bottom out cup for providing fluid communication from the cup to

the compression portion of the chamber during a compression stroke of the damper, as illustrated in the exemplary photo of the Super Deluxe Coil Ultimate.

Fluid Path

46. The capacity of SRAM's Rockshox Super Deluxe Coil Ultimate's fluid flow path is adjustable, as illustrated in the exemplary photo of the Super Deluxe Coil Ultimate.



Needle and Cam to adjust fluid flow capacity

47. On information and belief, SRAM has directly infringed one or more claims of the '223 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing and/or distributing the Accused Shocks in and into the United States.

48. On information and belief, SRAM has induced and continues to actively induce direct infringement of at least claim 1 of the ’223 patent by others (such as its distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). On information and belier, SRAM knew of the ’223 patent before offering the Accused Shocks for sale, and SRAM has taken affirmative steps that have encouraged, aided and abetted (and continues to encourage, aid and abet) direct infringement by its distributors, retailers, resellers, customers, and end-users in the United States, and SRAM has known that its induced acts constitute infringement of the ’223 patent or has been willfully blind to the infringement. These acts include, but are not limited to, SRAM’s manufacture and supply of the Accused Shocks (either directly or through direction of its wholly owned subsidiary(ies)), promotion on its website, providing user manuals/guides and instructions instructing its customers/end users how to use the Accused Shocks, and on information and belief, its contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Shocks in the United States.

49. On information and belief, SRAM has contributed to and continues to contribute to the direct infringement of at least claim 1 of the ’223 patent by others (such as its distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(c). Upon information and belief, SRAM (either directly or through direction of its wholly owned subsidiary(ies)) supplies the Accused Shocks or important (material) components of the Accused Shocks to its distributors, retailers, resellers, customers, and end-users in the United States. Upon information and belief, SRAM knew or was willfully blind that its Accused Shocks were both patented and infringing, that the Accused Shocks are not a staple article or commodity of commerce, and that the Accused Shocks have substantial non-infringing uses.

50. On information and belief, SRAM has infringed the ’223 patent in an egregious and willful manner and with knowledge of the ’223 patent, or was willfully blind to the risk of infringement.

51. SRAM's infringement of the '223 patent has caused and continues to cause damages and irreparable harm to FOX Factory.

**PRAYER FOR RELIEF**

WHEREFORE, FOX Factory respectfully prays that the Court enter judgment in its favor and award the following relief against SRAM:

A. Enter a judgment in favor of FOX Factory that SRAM and its wholly owned and/or controlled subsidiaries have infringed directly, contributorily, and by inducement at least claim 1 of the '331 patent, as well as additional claims of the '331 patent to be identified and asserted during the pendency of this action;

B. Enter a judgment in favor of FOX Factory that SRAM and its wholly owned and/or controlled subsidiaries have infringed directly, contributorily, and by inducement at least claim 1 of the '223 patent, as well as additional claims of the '223 patent to be identified and asserted during the pendency of this action

C. Preliminarily and permanently enjoin SRAM, its wholly owned and/or controlled subsidiaries, and their officers, directors, employees, agents, licensees, representatives, affiliates, subsidiary companies, related companies, servants, successors and assigns, and any and all persons acting in privity or in concert with any of them, from further infringing the '331 or '223 patents;

D. Order that SRAM and its wholly owned and/or controlled subsidiaries deliver up for destruction all infringing products in its possession;

E. Award FOX Factory actual damages adequate to compensate for infringement by SRAM and its wholly owned and/or controlled subsidiaries, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial, as a result of infringement of the '331 and '223 patents by those entities;

F. Award FOX Factory pre- and post-judgment interest on all damages awarded, as well as supplemental damages;

G. Find this to be an exceptional case and award FOX Factory its costs and attorney's fees under 35 U.S.C. § 285;

H. Find that the infringement by SRAM has been and continues to be egregious and willful misconduct, and award FOX Factory enhanced damages for willful patent infringement under 35 U.S.C. § 284; and

I. Award and grant FOX Factory such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND TRIAL BY JURY

FOX Factory demands a jury trial on all matters triable to a jury.

Dated: November 30, 2022

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

By: */s/ Arpita Bhattacharyya*
Arpita Bhattacharyya
*Attorneys for Plaintiff*
*FOX FACTORY, INC.*